**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| ENVIRONMENTAL INTEGRITY PROJECT<br>1000 Vermont Ave NW, Suite 1100<br>Washington, DC 20005;<br><br>EARTHJUSTICE<br>50 California Street, Suite 500<br>San Francisco, CA 94111; and<br><br>SIERRA CLUB<br>85 Second Street, 2nd Floor<br>San Francisco, CA 94105-3411;<br><br>Plaintiffs,<br><br>     v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY<br>1200 Pennsylvania Avenue NW<br>Washington, DC 20460;<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Case No. 1:14-cv-1282 |

_____

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.   Plaintiffs Environmental Integrity Project, Earthjustice, and Sierra Club

(collectively, "Plaintiffs") assert violations of the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552, by Defendant U.S. Environmental Protection Agency ("EPA") for improperly

withholding requested agency records concerning a draft regulation proposed by EPA to revise

the effluent limitation guidelines for the Steam Electric Power Generating Category ("Steam

Electric ELGs") to reduce water pollution from coal-fired power plants.

2.   As acknowledged by EPA, coal-fired power plants are by far the largest

discharger of toxic pollution in the United States, dumping billions of pounds of arsenic,

selenium, cadmium, and other dangerous pollutants into rivers, streams, and lakes every year.

The Steam Electric ELGs have not been revised since 1982 and contain no limits for toxic

pollution associated with coal combustion waste discharges.  Without federal standards, nearly

70% of all discharge permits for coal-fired power plants allow unlimited discharges of arsenic,

boron, cadmium, mercury, and selenium in violation of the Clean Water Act.  *See* Environmental

Integrity Project et al., *Closing the Floodgates: How the Coal Industry is Poisoning our Water

and How We Can Stop It*, 7 (July 23, 2013), *available at*

http://www.environmentalintegrity.org/news_reports/documents/2013_07_23_ClosingTheFlood

gates-Final.pdf.

3.   To ensure that the Steam Electric ELGs reflect advances in control technology,

the Clean Water Act requires EPA to review and, if appropriate, revise these effluent limitations

and underlying ELGs at regular intervals.  33 U.S.C. §§ 1311(d), 1314(b).  Section 301(d) of the

Clean Water Act requires that all effluent limitations "*shall* be reviewed at least every five years

and, if appropriate, revised."  *Id*. § 1311(d) (emphasis added).  Similarly, with respect to ELGs,

section 304(b) of Clean Water Act requires that "the Administrator *shall* . . . publish . . .

regulations, providing guidelines for effluent limitations, and, at least annually thereafter, revise,

if appropriate, such regulations."  *Id*. § 1314(b) (emphasis added).

4.      After three decades of delay, EPA is finally poised to act on this command.  On April 19, 2013, EPA signed a proposed rule to revise the Steam Electric ELGs, and the proposal was published in the Federal Register on June 7, 2013.  *See* Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, 78 Fed. Reg. 34,432 (proposed June 7, 2013) (to be codified at 40 C.F.R. pt. 423).  Although EPA has repeatedly extended the deadline for final action, the agency currently must finalize the rule by September 30, 2015 pursuant to a consent decree.  *See* Joint Stipulated Extension and Consent Decree Modification, *Defenders of Wildlife v. EPA*, No. 10-cv-01915 (D.D.C. Apr. 7, 2014), *available at* http://water.epa.gov/scitech/wastetech/guide/steam-electric/upload/Consent-Decree-Extension-4-April-7-2014.pdf.

5.      Plaintiffs submitted a FOIA request to EPA on July 26, 2013, seeking certain technical data that EPA relied on to develop the Steam Electric ELGs proposed rule but had not made public.  *See* Exhibit A.

6.      EPA responded to Plaintiffs' July 26, 2013 FOIA request by providing some of the technical data requested by Plaintiffs, but EPA withheld all or portions of several key data sets that it heavily relied on in developing the Steam Electric ELGs proposed rule on the ground that the data constituted Confidential Business Information exempt from disclosure under FOIA. Exhibit B.   Plaintiffs timely appealed EPA's partial denial of their FOIA request on October 11, 2013 on several grounds.  Exhibit C.  On December 13, 2013, EPA denied Plaintiffs' administrative appeal, finding that because the requested information was subject to an ongoing agency review process to make an eventual final determination of its confidentiality, Plaintiffs' FOIA request for that information was "moot."  Exhibit D.  In denying Plaintiffs' FOIA request as moot, EPA did not provide any estimated date by which the agency would make a final

determination of the confidentiality of the requested records, nor did EPA provide Plaintiffs with any assurance that any requested information that the agency might ultimately find not to be Confidential Business Information would be released to Plaintiffs in response to their July 26, 2013 FOIA request.  *Id.*

7.  On January 30, 2014, EPA wrote to Plaintiffs that it would take at least seven months—until approximately August 30, 2014—for EPA to issue final confidentiality determinations for the records Plaintiffs seek.  Exhibit E.

8.  In response to a June 26, 2014 email inquiry from Plaintiffs about the status of the confidentiality determinations, EPA sent a letter dated June 30, 2014, which stated that EPA believes it will now need until December of 2014 to issue final confidentiality determinations. Exhibits F and G.

9.  Timely disclosure of all non-exempt records and portions of records requested in Plaintiffs' FOIA requests to EPA is of vital importance to Plaintiffs and the public in order to evaluate critically the Steam Electric ELGs proposed rule, as well as the final rule that pursuant to a consent decree is due on September 30, 2015.

10. Plaintiffs seek a judgment that EPA has violated FOIA by improperly withholding records or portions of records requested by Plaintiffs without adequate justification.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.  Venue is proper in the District Court for the District of Columbia pursuant to 5 U.S.C. § 552(a)(4)(B).

12. Under FOIA, this Court has jurisdiction, upon receipt of a complaint, "to enjoin the agency from withholding agency records and to order the production of any agency records

improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  "The FOIA imposes no

limits on courts' equitable powers in enforcing its terms."  *Payne Enters., Inc. v. United States*,

837 F.2d 486, 494 (D.C. Cir. 1988).

13. This Court may award attorney fees and litigation costs pursuant to 5 U.S.C.

§ 552(a)(4)(E).

## PARTIES

14. Plaintiff Environmental Integrity Project ("EIP") is a nonpartisan, nonprofit

organization founded in 2002 by former EPA enforcement attorneys to advocate for more

effective enforcement of environmental laws. EIP's three objectives are: to provide objective

analysis of how the failure to enforce or implement environmental laws increases pollution and

affects the public's health; to hold federal and state agencies, as well as individual corporations,

accountable for failing to enforce or comply with environmental laws; and to help local

communities in key states obtain the protection of environmental laws.

15. EIP advocates for laws to protect public health and the environment from air and

water pollution from coal-fired power plants and other large sources of pollution.  As part of its

efforts to ensure effective enforcement of environmental laws, EIP participates in federal and

state rulemakings related to water pollution from the utility industry and brings lawsuits to

enforce the Clean Water Act on behalf of community and environmental groups that are harmed

by coal plant pollution.  In addition, EIP uses public data obtained through FOIA requests to

develop reports, media materials, and litigation briefs that educate the public and decision-

makers, and achieve its objectives.  EIP also disseminates information through its website,

www.environmentalintegrity.org.

16. Earthjustice is a nonprofit public interest law organization dedicated to protecting the magnificent places, natural resources, and wildlife of this earth, and to defending the right of all people to a healthy environment.  Earthjustice has made safeguarding the nation's waters one of its top priorities and has brought numerous lawsuits to enforce the Clean Water Act in the public interest.

17. Earthjustice publicizes information received from FOIA requests in its monthly electronic newsletter, which serves approximately 750,000 online supporters, as well as its quarterly magazine, which services approximately 80,000 subscribers.  Earthjustice also disseminates information obtained through FOIA requests through its web site and blog, www.earthjustice.org, which averages 100,000 unique visitors each month.  In addition, Earthjustice utilizes an online action alert system to urge members of the public to contact policymakers and ask them to take action based on information received from FOIA requests. Earthjustice's communications staff disseminates newsworthy information obtained from FOIA requests to the media, and Earthjustice's lobbyists provide relevant information obtained from FOIA requests to elected officials in Washington.

18. The Sierra Club was founded in 1892 and is the nation's oldest grassroots environmental organization.  The Sierra Club's national headquarters is located in San Francisco, California.  The Sierra Club is a nonprofit, membership organization incorporated in California with more than 600,000 members in all 50 states and the District of Columbia.  The Sierra Club's purpose is to explore, enjoy, and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; and to educate and enlist humanity to protect and restore the quality of the natural and human environments.

19. The Sierra Club's Beyond Coal campaign is a major effort to "replace dirty coal with clean energy by mobilizing grassroots activists in local communities to advocate for the retirement of old and outdated coal plants and to prevent new coal plants from being built." As part of its campaign, Sierra Club has prioritized its efforts to ensure that coal-fired power plants comply with the Clean Water Act and other environmental laws, and has an active communications, organizing, and litigation campaign to further these efforts.

20. The Beyond Coal campaign participates in dozens of proceedings annually, has a large communications budget, and communicates weekly with tens of thousands of citizens. Campaign experts and attorneys use available information to develop reports, media materials, and litigation briefs that further educate the public and decision-makers. Through that campaign, Sierra Club has built an extensive national network of public organizations and individuals interested in these issues, and it communicates with them regularly. The Sierra Club also disseminates information through its website, www.sierraclub.org.

21. Plaintiffs routinely use FOIA to obtain information from federal agencies, which Plaintiffs' legal and scientific experts analyze in order to inform their members and the public about public health and environmental issues such as air and water pollution from coal-fired power plants and other large sources of pollution. Plaintiffs regularly convey important information to their members and the public through publications and press releases, as well as by releasing to the public information and documents obtained through FOIA requests.

22. Plaintiffs bring this action on their own behalf and on behalf of their members. Plaintiffs and their members have been and continue to be injured by Defendant's failure to provide requested records within the timeframes mandated by the FOIA. The requested relief will redress these injuries.

23. Defendant EPA is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and has possession or control of the records Plaintiffs seek in this action.

## LEGAL BACKGROUND

24.  FOIA requires agencies of the federal government to release, upon request, information to the public, unless one of nine specific statutory exemptions applies.  5 U.S.C. § 552(a)(3)(A), (b).  These exemptions are narrowly construed, and the agency bears the burden of establishing the applicability of each exemption as to each record for which it is claimed.  *See Milner v. Dep't of Navy*, 131 S.Ct. 1259, 1262 (2011).

25. Upon receiving a FOIA request, an agency has twenty working days to respond with a determination that "inform[s] the requestor of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions."  *Citizens for Responsibility and Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 186 (D.C. Cir. 2013) ("*CREW*"); 5 U.S.C. § 552(a)(6)(A); 40 C.F.R. § 2.104(a).  An agency may delay an initial determination by ten working days only if the agency can demonstrate that it faces "unusual circumstances."  5 U.S.C. § 552(a)(6)(B); 40 C.F.R. § 2.104(d).  FOIA further requires agencies to make records themselves "promptly available" to requesting parties.  5 U.S.C. § 552(a)(3)(A)(ii); *CREW*, 711 F.3d at 188.

26. If an agency withholds responsive records, the burden is on the agency to prove that an exemption applies and that it outweighs FOIA's policy of disclosure.  *See, e.g.*, 5 U.S.C. § 552(a)(3); *Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 679 n. 20 (D.C. Cir. 1976) ("The party seeking to avoid disclosure bears the burden of proving that the circumstances justify nondisclosure.").

27. In this case, EPA has invoked FOIA Exemption 4, which protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4).  When determining whether an agency may properly invoke FOIA Exemption 4, a court will first consider whether the information may be classified as a trade secret and, if the information is not a trade secret, whether the information otherwise constitutes confidential business information.  *Physicians Comm. for Responsible Med. v. Nat'l Insts. of Health*, 326 F.Supp.2d 19, 21–24 (D.D.C. 2004) (citing *Pub. Citizen Health Research Group v. Food & Drug Admin.*, 704 F.2d 1280, 1286–91 (D.C. Cir. 1983)).  Commercial information is privileged or confidential and protected from FOIA disclosure only if applicable statutory and regulatory criteria are satisfied.  *See* 33 U.S.C. § 1318(b); 40 C.F.R. § 2.208.  Before withholding under Exemption 4 any record or portions of a record requested by Plaintiffs, EPA is required to find, *inter alia*, that Clean Water Act Section 308, 33 U.S.C. § 1318, does not require that the record be made public and that disclosure of the record is likely to cause substantial harm to the company from which EPA obtained the record due to the potential for a competitor to make use of the information once released.  *See Pub. Citizen Health Research Group*, 704 F.2d at 1290–91.  Substantial harm specifically does not include harm "as might flow from . . . the embarrassing publicity attendant upon public revelations concerning, for example, . . . violations of . . . environmental or safety laws."  *Id.* at 1290 n.30 (internal citations and quotation marks omitted).

28. Whenever an agency determines that a portion of a record should be withheld under one of FOIA's exemptions, the agency must still release to the public any portions of that record that contain "reasonably segregable" non-exempt information.  5 U.S.C. § 552(b) ("Any

reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

29. If an agency makes an initial determination that it will deny a FOIA request in whole or in part, the requester is entitled to administratively appeal the determination.  5 U.S.C. § 552(a)(6)(A)(ii).  EPA regulations require administrative appeals to be filed within thirty calendar days.  40 C.F.R. § 2.104(j).  FOIA requires the agency to make a determination with respect to an administrative appeal of a denial of a request within twenty working days.  5 U.S.C. § 552(a)(6)(A)(ii).

30. When a person requests information that a business claims is "confidential business information," EPA regulations provide that EPA must make an initial determination as to whether the information is entitled to confidential treatment, 40 C.F.R. § 2.204(a)(1), and "promptly" provide the business with oral and written notice.  *Id.* §§ 2.204(a)(1), 2.204(d)(1)(i), 2.204(e)(1), 2.204(e)(3).  Affected businesses have fifteen days after the date of the business's receipt of the written notice to submit comments.  *Id.* § 2.204(e)(2).  "Except in extraordinary circumstances, the EPA legal office will not approve . . . an extension [of the comment period] without the consent of any person whose request for release of the information under 5 U.S.C. 552 is pending."  *Id.* § 2.205(b)(2).  The appropriate EPA legal office must issue a final determination as to whether the information is entitled to confidential treatment, and this "determination shall serve as the final determination on appeal from an initial denial of the request."  *Id.* § 2.205(a)(2).

31. FOIA provides that the District Court shall have jurisdiction "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

32. FOIA and Defendant's regulations state that a requester is entitled to a waiver of fees associated with responding to a FOIA request when the information sought "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii); 40 C.F.R. § 2.107(*l*)(1).  Further, an agency cannot assess fees against a requester if it does not respond to the request within the time established by FOIA.  *See* 5 U.S.C. § 552(a)(4)(A)(viii).

33. FOIA permits the Court to "assess  . . . reasonable attorney fees and other litigation costs reasonably incurred in any case in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E).

## FACTUAL BACKGROUND

34. Coal-fired power plants dump more toxic pollution into our rivers, streams, and lakes than any other industry in the United States based on toxicity and volume.  According to EPA, coal-fired power plants discharge approximately *5,500,000,000 pounds* of pollution each year.   EPA estimates that power plant discharges constitute more than half of all toxic pollution discharged by all regulated industrial categories.

35. EPA has identified at least 41 heavy metals and other polluting substances as "potential constituents of concern" in coal-fired power plant wastewaters, including arsenic, selenium, mercury, and lead.  Many of these pollutants pose serious health risks even in very low concentrations.  The Steam Electric ELGs, which have not been updated since 1982, do not impose any limits on the vast majority of these pollutants.

36. EPA has made clear that affordable treatment technologies are available to reduce and, in many cases, eliminate these dangerous and illegal discharges.  On April 19, 2013, EPA signed a proposed rule to revise the Steam Electric ELGs, and the proposal was published in the

11

Federal Register on June 7, 2013.  The proposed rule contains a range of options to control power plant wastewater that differ substantially in their rigor.  The weakest option that the proposal puts forward as "preferred" would control approximately 2.2 billion pounds per year less than the strongest preferred option.  In contrast, the two strongest options would eliminate between 3.3 and 5.2 billion pounds of the total 5.5 billion pounds of pollution discharged from coal power plants each year.  Under the terms of a consent decree, EPA must finalize the rule no later than September 30, 2015.

    37. Three months before signing the proposed Steam Electric ELGs rule, EPA provided a draft of the proposed rule to the White House Office of Management and Budget ("OMB").  During that time, OMB led an inter-agency review of EPA's Steam Electric ELGs proposed rule for ninety days before the proposal was released, and changes made through that review process substantially modified and weakened the proposed rule.  Plaintiffs submitted FOIA requests to both the U.S. Small Business Administration ("SBA") and OMB on April 25, 2013, requesting agency records not yet publicly disclosed that would shed light on those agencies' involvement in EPA's rulemaking process.  *Environmental Integrity Project v. U.S. Small Business Administration*.  Docket No. 12, No. 13-1962 (D.D.C. Jan. 28, 2014).  Among other things, Plaintiffs sought—and continue to seek—SBA and OMB records that may relate to the specific revisions OMB required EPA to make to the proposed rule, what factors or special interest groups influenced OMB revisions, and the legal, scientific, and technical basis for OMB revisions to EPA's initial draft of the proposed rule.  *Id.*

    38. On July 26, 2013, Plaintiffs submitted a FOIA request to EPA asking that EPA release certain technical data that EPA relied upon to develop the Steam Electric ELGs rule but had not made available to the public.  *See* Exhibit A.  Specifically, Plaintiffs requested eight

separate data sets that EPA referred to in the rulemaking record but did not make available to the public. *Id.* The FOIA also requested a fee waiver and expedited processing. *Id.*

39. On August 5 and August 29, 2013, EPA provided to Plaintiffs four of the eight data sets that Plaintiffs had requested. Exhibit H. On August 29, EPA also informed Plaintiffs that it was withholding two of the requested data sets because "they have been determined to be data exempt from mandatory disclosure by virtue of 5 U.S.C. 552(b), which states that the provisions of the FOIA do not apply to records that are 'trade secrets and commercial or financial information obtained from a person and privileged or confidential.'" *Id.*

40. On August 30, 2013, EPA provided to Plaintiffs some portions of a seventh data set while withholding other portions "due to CBI concerns." Exhibit I.

41. On September 25, 2013, EPA notified Plaintiffs that it was withholding the eighth data set that Plaintiffs had requested on the ground that it consisted of "geological or geophysical information" that is exempt from disclosure under FOIA Exemption 9, 5 U.S.C. § 552(b)(9). Exhibit J. Plaintiffs do not challenge EPA's withholding of this eighth data set.

42. On October 11, 2013, Plaintiffs timely appealed EPA's denial of two of the data sets, and partial denial of the third data set, under FOIA Exemption 4. Exhibit C. In their administrative appeal, Plaintiffs contended that the withheld data cannot be withheld as Confidential Business Information because it is "effluent data" and/or non-trade secret information that EPA obtained pursuant to its implementation of the Clean Water Act and therefore Clean Water Act Section 308, 33 U.S.C. § 1318, requires that the data be made available to the public. *Id.* Plaintiffs also contended that, in any event, the withheld data would not qualify as Confidential Business Information that may be exempt from disclosure under FOIA, as its disclosure would not result in substantial competitive harm to the companies that

13

had provided EPA with the data.  *Id.*  In addition, Plaintiffs contended that at a minimum, EPA

had not met its burden to justify that each withheld record was exempt under FOIA and did not

contain reasonably segregable, non-exempt portions.  *Id.*

      43. On December 13, 2013, EPA denied Plaintiffs' administrative appeal without

deciding the merits of Plaintiffs' contentions.  Exhibit D.  Rather, EPA found that because the

requested information was subject to an ongoing agency review process to make an eventual

final determination of its confidentiality, Plaintiffs' FOIA request for that information was

"moot."  *Id.*  In denying Plaintiffs' FOIA request as moot, EPA did not provide any estimated

date by which the agency would make a final determination of the confidentiality of the

requested records, nor did EPA provide Plaintiffs with any assurance that any requested

information that the agency might ultimately find not to be Confidential Business Information

would be released to Plaintiffs in response to their July 26, 2013 FOIA request.  *Id.*

      44. On January 28, 2014, Plaintiffs filed a Motion for Leave to Amend Complaint to

assert related FOIA claims against OMB and the claims identified in this Complaint against EPA

in *Environmental Integrity Project v. U.S. Small Business Administration*.  Docket No. 12, No.

13-1962 (D.D.C. Jan. 28, 2014).

      45. After Plaintiffs moved for leave to add their claims against EPA to their pending

FOIA action against SBA, EPA sent a letter to Plaintiffs dated January 30, 2014, which stated

that it would take at least seven months—or until approximately August 30, 2014—for EPA to

issue final confidentiality determinations for the data sets that Plaintiffs had requested.  Exhibit

E.

      46. On June 18, 2014, this Court granted Plaintiffs' motion to join OMB as a

Defendant but denied Plaintiffs' motion to join EPA as a Defendant in *Environmental Integrity*

*Project v. SBA* because the information sought from EPA was technical in nature and different

from the inter- and intra-agency communications sought from SBA and OMB, and because EPA

is basing its withholdings on a different exemption under FOIA.  Docket No. 18, No. 13-1962

(D.D.C. June 18, 2014).

47. After receiving this Court's order, Plaintiffs contacted EPA concerning the status

of EPA's determination of the confidentiality of the data sets that Plaintiffs had requested.  On

June 30, 2014, in response to a June 26, 2014 email inquiry from Plaintiffs, EPA sent a letter to

Plaintiffs stating that it would now need until December of 2014 to issue final confidentiality

determinations.  Exhibit G.  In its letter, EPA stated that the letters requesting substantiation of

confidential business information claims were only just then being sent to companies.  *Id.*  Thus,

it has taken EPA almost an *entire year* after receiving Plaintiffs' FOIA request just to begin the

substantiation process.

48. In the June 30, 2014 letter, EPA states it will release information where

companies waive confidentiality claims on a rolling basis.  *Id.*  As of the date of this Complaint,

Plaintiffs have not received any of the withheld records.

## CLAIMS FOR RELIEF

49. Plaintiffs re-allege and incorporate the allegations of all preceding paragraphs of

this Complaint as if fully set forth herein.

50.  By improperly withholding records responsive to Plaintiffs' July 26, 2013

request, Defendant has violated FOIA's mandate to release agency records to the public.  *See* 5

U.S.C. § 552(a)(3)(A) & (a)(6).

51. EPA regulations related to determinations of whether business information is entitled to confidential treatment do not exempt Defendant from compliance with FOIA's mandate to release agency records to the public.  *Id.*

52.  Defendant has wrongfully withheld the requested records from Plaintiffs.

53.  Plaintiffs have exhausted the applicable administrative remedies.

54.  Plaintiffs are entitled to obtain the requested records immediately at no cost.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request that this Court enter a judgment:

(1)  declaring that Defendant has violated FOIA by failing to provide all records responsive to Plaintiffs' FOIA requests;

(2) ordering that Defendant make all requested records available to Plaintiffs promptly and at no cost to Plaintiffs;

(3) awarding Plaintiffs' litigation costs and reasonable attorneys' fees in this action; and

(4) ordering such other relief as the Court may deem just and proper.


DATED:  July 28, 2014                    Respectfully Submitted,


                                 ___/s/ Jennifer Duggan_____
                                 Jennifer Duggan (DC Bar No. 978352)
                                 Environmental Integrity Project
                                 1000 Vermont Ave NW, Suite 1100
                                 Washington, DC 20005
                                 (802) 225-6774
                                 jduggan@environmentalintegrity.org

                                 *Counsel for Environmental Integrity Project*

    /s/ Thomas Cmar
Thomas Cmar*
Earthjustice
5042 N. Leavitt Street, Suite 1
Chicago, IL  60625
(312) 257-9338
tcmar@earthjustice.org

*Counsel for Earthjustice and Sierra Club*

*Application for admission *pro hac vice* pending