UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ENVIRONMENTAL INTEGRITY
PROJECT, *et al.*,

    Plaintiffs,

    v.

THE UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY,

    Defendant.

Civil Action No. 14-1282 (JEB)

**MEMORANDUM OPINION**

Although this suit purports to be about effluents, it is, at its core, a case about the interplay of the Freedom of Information Act and the Clean Water Act. In 2010, as part of its effort to craft new pollution-control regulations, the Environmental Protection Agency took two actions relevant here: it sent a questionnaire to over 700 steam-driven power plants, and it gathered information from vendors who sold equipment and services to those plants. These surveys were designed to collect data about pollution and gain insight into plant-specific business practices. EPA stockpiled a mountain of data from this effort, ranging from the specific cost a plant pays to remove pollutants from its wastewater to the concentrations and quantities of those pollutants. The agency then used the data to prepare new regulations – colloquially known as "effluent guidelines" – which it proposed and then promulgated under the Clean Water Act.

In the midst of all this, Plaintiffs Environmental Integrity Project, Earthjustice, and Sierra Club filed a Freedom of Information Act request seeking certain data obtained by EPA from its surveyees. Dissatisfied with the agency's partial response, Plaintiffs brought this suit to compel

1

disclosure of the remainder of the data.  On Cross-Motions for Summary Judgment, the parties agree that the data may be withheld under FOIA as confidential business information.  Plaintiffs nevertheless maintain that the Clean Water Act independently requires disclosure of the information, thereby removing EPA's discretion to invoke FOIA as a basis for withholding.  The Court disagrees, concluding that the CWA does not expressly preempt the agency's ability to withhold the material.  It will therefore grant EPA's Motion, deny Plaintiff's, and enter judgment for the agency.

**I.      Background**

This dispute arises out of EPA's decision, announced in September 2009, to revise its decades-old regulations limiting pollution by steam-electric power plants.  See Def. MSJ at 6. To assist in that process, the agency designed an "industry survey to obtain technical information related to wastewater generation and treatment, and economic information such as costs of wastewater treatment technologies and financial characteristics of potentially affected companies."  78 Fed. Reg. 34432, 34432 (June 7, 2013).  It distributed the survey in June 2010 to 733 power plants and received responses from all of them.  Id. at 34442.  These responses served as "[a] principal source of information used in developing" proposed rules, which were published in the Federal Register in June 2013.  Id.  EPA also "gathered data from technology vendors through presentations, conferences, meetings, and email and phone contacts to gain information on the technologies used in the industry."  Id. at 34445.  That work "informed the development of the industry survey" and also contributed to EPA's understanding of "technology costs" and "pollutant loadings estimates."  Id.

In July 2013, shortly after EPA issued its notice of proposed rulemaking, but well before those rules were finalized in November 2015, see 80 Fed. Reg. 67838 (Nov. 3, 2015), Plaintiffs

submitted a FOIA request seeking data and other information that the agency had obtained from its industry questionnaire and vendor outreach. In particular, they sought "the amount of pollutants that individual power plants discharge to water bodies, data on the cost of wastewater treatment technologies, and data on how well those technologies perform in reducing pollutants that power plants discharge." Pl. Reply at 15; see Def. MSJ, Attach. 1 (Declaration of Robert K. Wood), ¶ 17. EPA responded by "provid[ing] some but not all of the requested data to Plaintiffs." Pl. MSJ/Opp. at 3. As to the withheld material challenged by Plaintiffs here, it asserted that power plants and vendors had claimed the data was "confidential business information" – making it presumptively exempt from disclosure under FOIA Exemption 4. See Wood Decl., ¶ 18; 5 U.S.C. § 552(b)(4). Plaintiffs appealed EPA's initial determination, and the agency initiated the process of conducting a more in-depth analysis – including contacting the parties that had submitted the data to EPA – to substantiate whether the withheld material was properly categorized as confidential business information. See Wood Decl., ¶¶ 20-25, 34.

A year after submitting its FOIA request, and having not yet received a response from EPA, Plaintiffs in July 2014 brought suit in this Court, seeking to compel disclosure of the data they had requested under FOIA. See Complaint at 16. The parties agreed to a schedule by which EPA would finalize its confidentiality determinations and release any data deemed not confidential. See ECF No. 11 (Meet and Confer Statement); ECF No. 12 (Motion to Amend Schedule), ECF No. 13 (Motion for Extension of Time to Complete CBI Determinations). Complying with that schedule, EPA completed its determinations in February 2015, issuing its final response to Plaintiffs shortly thereafter along with nonexempt documents. See Wood Decl., ¶¶ 34-35. Plaintiffs maintained their challenge, and the parties proceeded to brief their respective Motions for Summary Judgment, which are now before the Court.

**II.    Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of

other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

**III.   Analysis**

In moving for summary judgment, EPA relies entirely on Exemption 4, which protects trade secrets and confidential business information. Plaintiffs do not dispute the notion that if Exemption 4 governs, they are out of luck; instead, they believe the CWA trumps Exemption 4. The issue before the Court is thus a narrow one: should a court compel disclosure of documents exempt under FOIA where a separate statute, passed several years after FOIA was enacted, suggests that the agency must disclose them? The Court concludes that, at least as to the relevant section of the Clean Water Act, 33 U.S.C. § 1318, the answer is no. The analysis begins with FOIA and then moves to the CWA.

A. FOIA

A logical starting point is the text and structure of FOIA itself. Enacted in 1966 "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny," Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted), FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

Even though "the basic objective of the Act is disclosure," Chrysler Corp. v. Brown, 441 U.S. 281, 290 (1979), not all requests for records must be honored, as FOIA also provides "exemptions from compelled disclosure. They are nine in number and are set forth in § 552(b)." Rose, 425 U.S. at 361. "The Act's broad provisions favoring disclosure [in subsection (a)], coupled with the specific exemptions [in subsection (b)], reveal and present the 'balance' Congress has struck" between "'the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy.'" John Doe Agency v. John Doe Corp., 493 U.S. 146, 152, 153 (1989) (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess., 6 (1966)).

To further its pro-disclosure scheme, FOIA confers on district courts the authority "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." § 552(a)(4)(B). "[A]gency records which do not fall within one of [subsection (b)'s] exemptions are 'improperly' withheld." U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 151 (1989). Conversely, "[i]f an agency refuses to disclose agency records that indisputably fall within one of the subsection (b) exemptions, the agency has 'withheld' the records, albeit not 'improperly' given the legislative authorization to do so." Id. at 153 n.13; see also NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 137 (1975) ("[T]he disclosure obligation 'does not apply' to those documents described in the nine enumerated exempt categories listed in § 552(b).").

Importantly, the judicial authority conferred by FOIA "to devise remedies and enjoin agencies can only be invoked[] under the jurisdictional grant conferred by § 552[(a)(4)(B)]." Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 150 (1980). The Court's power to order relief "under this provision is therefore premised upon three requirements: a

6

'showing that an agency has (1) "improperly"; (2) "withheld"; (3) "agency records."'" Bureau of Nat. Affairs, Inc. v. U.S. Dep't of Justice, 742 F.2d 1484, 1488 (D.C. Cir. 1984) (quoting Kissinger, 445 U.S. at 150). "Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements." Tax Analysts, 492 U.S. at 142.

Turning to the facts at bay, Plaintiffs invoke the power of this Court to compel disclosure under FOIA, even though they concede that the sought-after data satisfy the criteria for permissible withholding under FOIA Exemption 4. That provision states that FOIA's disclosure requirement "does not apply to matters that are . . . (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b). Plaintiffs agree that the information sought constitutes confidential business information. See Wood Decl., ¶ 17; Def. Opp./Reply at 1 (stating that "plaintiffs do not dispute that the information withheld constitutes CBI as defined by FOIA Exemption 4"); see generally Pl. Reply (not disputing the point).

This would, at first blush, appear to resolve the competing Motions. In refusing to contest whether EPA properly withheld the documents under FOIA, Plaintiffs have forfeited their ability to use that statute as the vehicle to compel disclosure. As EPA was within its rights to invoke Exemption 4 in refusing to disclose the data, that information has not been "improperly" withheld under FOIA. See Tax Analysts, 492 U.S. at 142. With no "improper[]" withholding having occurred, the Court lacks authority under FOIA's remedial provisions to order the requested relief. See id.

B. Clean Water Act

Plaintiffs counter that the game is not yet over. They point to a separate statutory provision in section 308 of the Clean Water Act, codified at 33 U.S.C. § 1318, which they argue "requires EPA to make available to the public all of the requested technical data that it is withholding under Exemption 4." Pl. MSJ/Opp. at 14. This argument needs some unpacking, so the Court once again finds it wisest to start with the language of the statute.

The provision at issue, § 1318, contains two subsections relevant here. Section 1318(a) grants EPA broad authority to collect information as part of its statutory mandate to develop pollution-control regulations:

> Whenever required to carry out the objective of this chapter, including but not limited to (1) developing or assisting in the development of any effluent limitation . . . (A) the Administrator shall require the owner or operator of any point source to (i) establish and maintain such records, (ii) make such reports, (iii) install, use, and maintain such monitoring equipment or methods . . . (iv) sample such effluents . . . and (v) provide such other information as he may reasonably require . . . .

Id. Section 1318(b), in turn, places certain requirements on what EPA can or must do (or refrain from doing) with that information:

> Any records, reports, or information obtained under this section (1) shall, in the case of effluent data, be related to any applicable effluent limitations, toxic, pretreatment, or new source performance standards, and (2) shall be available to the public, except that upon a showing satisfactory to the Administrator by any person that records, reports, or information, or particular part thereof (other than effluent data), to which the Administrator has access under this section, if made public would divulge methods or processes entitled to protection as trade secrets of such person, the Administrator shall consider such record, report, or information, or particular portion thereof confidential in accordance with the purposes of [the Trade Secrets Act, codified at] section 1905 of Title 18.

Id. (emphasis added).

8

As Plaintiffs read the statute, whenever EPA uses its § 1318(a) authority to collect records or data, that information is "obtained under this section" and thus must be disclosed according to the "shall be available to the public" language of § 1318(b).  The only exception to mandatory disclosure, they continue, relates to information "entitled to protection as trade secrets."  Id.  In short, they read § 1318(b) to be structured analogously to FOIA: mandatory disclosure is the norm, and the only limited exception is for information properly classified as "trade secrets."  Under this interpretation, EPA cannot withhold the data from disclosure here because the agency concedes that at least some of the data was collected under its § 1318(a) authority and because it agrees that none qualifies as "trade secrets" (as opposed to simply confidential business information) as that term is understood in the FOIA context.  See Pl. MSJ/Opp. at 15-16; Wood Decl., Ex. U (EPA Final Confidentiality Determination) at 2.

EPA's response is to dispute that the phrase "trade secrets" has the same meaning in both statutes, arguing that the agency has a long history of treating confidential business information as "trade secret[]" information under the CWA even though FOIA makes clear that those are two entirely distinct concepts.  See Def. Opp./Reply at 5-6.  "Trade secrets," furthermore, is not defined by the CWA, and, given that ambiguity, EPA believes it is entitled to deference in concluding that the term encompasses confidential business information.  The Court sees no need to rely on this argument, however, finding instead that it is simpler to resolve the question of whether the Clean Water Act offers any basis for compelling disclosure here.

Because Plaintiffs rely exclusively on FOIA to supply both a cause of action and a source of relief, see Compl., ¶¶ 12-13, and because there is no dispute that the data is properly classified as confidential business information under Exemption 4, the only way Plaintiffs may succeed is if the CWA somehow modifies FOIA to preclude EPA's ability to invoke its exemptions.  As

Plaintiffs explain it, purportedly mandatory "statutory disclosure requirements such as [§ 1318(b)] supersede the more general provisions of FOIA Exemption 4 . . . and the Trade Secrets Act . . . that might otherwise require the Government to withhold information as [confidential business information]." Pl. MSJ/Opp. at 16. As a result, they posit, because EPA can no longer rely on the "confidential business information" part of Exemption 4, the data has been "improperly" withheld.

The problem with this argument – although surprisingly never mentioned by EPA in its briefing – is that Congress has provided a built-in rule of statutory construction for deciding whether a later-enacted statute modifies FOIA, and the CWA does not meet the strictures of that rule. Section 12 of the Administrative Procedure Act, codified as amended at 5 U.S.C. § 559, provides that a "[s]ubsequent statute may not be held to supersede or modify this subchapter . . . except to the extent that it does so expressly." The provision applies broadly to the APA, including FOIA. See Church of Scientology of California v. IRS, 792 F.2d 146, 149 (D.C. Cir. 1986) ("FOIA is a structural statute, designed to apply across-the-board to many substantive programs[,] . . . and it is subject to the provision, governing all of the Administrative Procedure Act of which it is a part, that a '[s]ubsequent statute may not be held to supersede or modify this subchapter . . . except to the extent that it does so expressly.'") (citation and internal quotation marks omitted).

"[T]he import of the § 559 instruction is that Congress's intent to make a substantive change [to the APA] be clear." Ass'n of Data Processing Serv. Organizations, Inc. v. Bd. of Governors of Fed. Reserve Sys., 745 F.2d 677, 686 (D.C. Cir. 1984) (emphasis omitted); see Marcello v. Bonds, 349 U.S. 302, 310 (1955) ("Exemptions from the terms of the Administrative Procedure Act are not lightly to be presumed in view of the statement in [§ 559] that

10

modifications must be express."). The D.C. Circuit has, accordingly, required that a later-enacted statute "plainly express[] a congressional intent to depart from" the standard provisions of the APA. See Asiana Airlines v. FAA, 134 F.3d 393, 398 (D.C. Cir. 1998); Maxwell v. Snow, 409 F.3d 354, 357 (D.C. Cir. 2005) ("FOIA is intended as an 'across-the-board' statute covering all requests for information unless specifically exempted in a later statute."); see also Five Points Rd. Joint Venture v. Johanns, 542 F.3d 1121, 1127 (7th Cir. 2008) ("Section 559 . . . prevents a statute from amending the APA by implication.").

Plaintiffs have not shown that the Clean Water Act satisfies this demanding standard. The clearest way for Congress to express its intent to displace generally applicable APA rules is to "expressly state[] that the APA is inapplicable." Five Points Rd., 542 F.3d at 1127. But Congress may also preempt the APA if it "has established procedures so clearly different from those required by the APA that it must have intended to displace the norm." Asiana Airlines, 134 F.3d at 397. Such an intent may be found, for example, when Congress creates a comprehensive, "freestanding scheme" with particularized procedures that are "different and unique" from those provided by the APA. Five Points Rd., 542 F.3d at 1127. Alternatively, by "duplicating" generally applicable APA procedures, it may be presumed that Congress "replac[ed] the dispositions of FOIA." Church of Scientology, 792 F.2d at 149 (noting that Congress in § 6110 of the Internal Revenue Code made clear its intent to depart from FOIA by, *inter alia*, setting forth "procedures to obtain and restrain disclosure, time limits, the level of assessable fees, and an action to compel or restrain disclosure in the Claims Court").

Plaintiffs cannot identify Congress's express intent to exempt the CWA from the general provisions of FOIA. They point to no clear FOIA-displacing language and offer no argument that § 1318(b) has crafted specific information-disclosure procedures or a comprehensive,

"freestanding" scheme that "duplicat[es] and hence presumably replac[es]" FOIA. See id. Indeed, the CWA offers no procedures for obtaining information whatsoever, meaning it clearly falls short of a separate statutory scheme that effectively replicates what Congress has provided through FOIA. See id.

In reaching the conclusion that the CWA does not displace FOIA, it is useful to compare § 1318 to the provisions of another environmental statute providing for the collection and disclosure of information: the Toxic Substances Control Act. See 15 U.S.C. § 2601 *et seq*. Like the CWA, it gives EPA authority to collect specific data from private entities. See §§ 2607, 2609. Unlike the CWA, however, its provisions clearly delineate when "disclos[ure]" – not "availab[ility]" – is mandatory, see § 2613(a), stating expressly that in some circumstances EPA may not rely on FOIA Exemption 4 to withhold data. See § 2613(b) ("If a request is made to the Administrator under [FOIA]" for specific information meeting the requisite criteria, "the Administrator may not deny such request on the basis of subsection (b)(4) of [FOIA].").

Another useful data point is § 1083 of the National Defense Authorization Act of 2010. That statute is structured similarly to § 1318 of the CWA in that it provides, without reference to FOIA, that the Secretary of Defense "shall release to the public, upon request" (with one limited exception) the names of students and instructors attending the military program formerly and infamously known as School of the Americas. See National Defense Authorization Act for Fiscal Year 2010, P.L. 111–84, § 1083, 123 Stat. 2190, 2482 (Oct. 28, 2009). In Cameranesi v. U.S. Dep't of Def., 941 F. Supp. 2d 1173 (N.D. Cal. 2013), however, a district court applied FOIA's exemptions in deciding whether the government's withholding of information was proper.

The only full-throated argument Plaintiffs advance for why the CWA precludes EPA's recourse to FOIA exemptions is to invoke an unnamed "rule" of statutory construction that "a statutory disclosure requirement that is separate from FOIA, such as the disclosure mandate in [§ 1318(b)], supersedes the more general provisions of FOIA Exemption 4 and the Trade Secrets Act that might otherwise allow or require the Government to withhold Confidential Business Information." Pl. Reply at 10.  But Congress in 5 U.S.C. § 559 has provided an indisputable rule of construction for precisely this circumstance, which requires express congressional intent to depart from FOIA's terms.

In addition, Plaintiffs do not acknowledge the potential takings-related consequences if the Court were to read the CWA's "shall be available" language as mandating disclosure even where a FOIA exemption would otherwise permit withholding.  Such a requirement could simultaneously effectuate a taking of property under the Fifth Amendment and trigger the government's obligation to pay just compensation.  See, e.g. Carpenter v. United States, 484 U.S. 19, 26 (1987) ("Confidential business information has long been recognized as property."); Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1003-04 (1984) ("[T]o the extent that Monsanto has an interest in its health, safety, and environmental data cognizable [collected by EPA] as a trade-secret property right under Missouri law, that property right is protected by the Taking Clause of the Fifth Amendment."); P. Stephen Gidiere III, Fed. Info. Manual § 9.2.4 ("[C]ourts agree that disclosure of confidential business information can be a taking . . . ."); cf. Philip Morris, Inc. v. Reilly, 312 F.3d 24, 46 (1st Cir. 2002) (concluding that Massachusetts law mandating public disclosure of tobacco companies' trade-secret ingredient lists constituted a regulatory taking).

Plaintiffs, moreover, offer only a single relevant case to support their argument: Gersh & Danielson v. EPA, 871 F. Supp. 407 (D. Colo. 1994), which held that § 1318(b) did preclude the EPA from relying on any of FOIA's exemptions, apart from the narrow "trade secrets" part of Exemption 4. See id. at 410. The court reasoned that § 1318(b) "conflicts with" FOIA's nine exemptions because the former compels EPA to disclose all information but trade secrets, whereas FOIA permits such information to be withheld. Id. Because the CWA was enacted several years after FOIA, the court thought it clear that "Congress intended that information obtained under [§ 1318] be subject only to that section's trade-secrets exemption," id., and that the government could not rely on any of FOIA's other, non-trade-secret exemptions to refuse disclosure. Id. It therefore held that the plaintiffs were entitled to an order compelling production of documents withheld by EPA under the law-enforcement exemption – Exemption 7 – and the "confidential business information" component of Exemption 4. Id.

In reaching this conclusion, Gersh never mentioned § 559 of the APA and thus failed to analyze whether Congress through the CWA expressed its clear intent to displace FOIA. Because a § 559 analysis is required by the binding precedent of this circuit, however, Gersh cannot offer any persuasive authority here. See Maxwell, 409 F.3d at 357 ("FOIA . . . cover[s] all requests for information unless specifically exempted in a later statute."); Church of Scientology, 792 F.2d at 149 n.2 ("[Section 559] increases the burden that must be sustained before an intent to depart from the Administrative Procedure Act can be found.").

In any event, Gersh appears to have misconstrued the clause of § 1318(b) beginning with "except that . . ." as a narrow exemption from the Clean Water Act's otherwise blanket command that information "shall be available to the public." § 1318(b). Gersh, like Plaintiffs, viewed § 1318(b) as analogous to FOIA – i.e., disclosure is the norm, but Congress granted the

14

government discretionary power to withhold information pursuant to certain exemptions, which, in the case of the CWA, consists of "only one exemption, a trade-secrets exemption . . . ." 871 F. Supp. at 410.

      A close reading of the "except that . . ." clause, however, shows that it functions not as an exemption from disclosure that EPA may invoke at will, but rather as a statutory bar against disclosure that may be invoked by information providers – here, power plants and vendors – if certain conditions are satisfied. Specifically, if an information provider makes a "showing satisfactory to the Administrator" that information it gave to EPA, "if made public[,] would divulge methods or processes entitled to protection as trade secrets," it is unlawful for EPA to disclose it under the Trade Secrets Act. See § 1318(b). Armed with that provision, a power plant may enjoin EPA from disclosing trade-secret information even if the agency would prefer its release. See RSR Corp. v. Browner, 924 F. Supp. 504, 511-12 & n.3 (S.D.N.Y. 1996) (Chin, J.) (suggesting that § 1318(b)'s "except that . . ." clause permits private parties to enjoin EPA from releasing trade-secret information except to the extent such information was considered "effluent data"); McDonnell Douglas Corp. v. Widnall, 57 F.3d 1162, 1164 (D.C. Cir. 1995) ("[T]he Trade Secrets Act does not furnish a private cause of action against governmental disclosure . . . but it can be relied upon in challenging agency action that violates its terms as 'contrary to law' within the meaning of the [APA].") (citations omitted); CNA Fin. Corp. v. Donovan, 830 F.2d 1132, 1151 (D.C. Cir. 1987) (same).

      The Court concludes, in sum, that the "shall be available to the public" language in § 1318(b) does not have the effect of displacing or superseding FOIA's nine exemptions. EPA thus acted within its discretion under FOIA to withhold the data sought by Plaintiffs under 5 U.S.C. § 552(b)(4).

## IV. Conclusion

For these reasons, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Cross-Motion for Summary Judgment will be denied. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: March 29, 2016